UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Charles Newman, *et al*.,

    Plaintiffs,

v.

Total Quality Logistics, LLC,

    Defendant.

Case No. 1:20cv173

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon the Motion to Compel Arbitration as to Charles Newman and to Dismiss the Complaint, or In the Alternative, to Strike Class Allegations filed by Defendant Total Quality Logistics, LLC. (Doc. 14). Plaintiff filed a Response in Opposition (Doc. 19) and Defendants filed Reply (Doc. 20).

## I. BACKGROUND

According to the First Consolidated Amended Class Action Complaint, Plaintiffs are either trucking companies or sole proprietors of trucking companies. (Doc. 8, ¶ 5-10).[1] Defendant Total Quality Logistics, LLC is a freight brokerage firm which connects its customers to freight carriers. (Doc. 8, ¶ 12-13). In the course of providing brokerage services, Defendant has acquired the personal and financial information of many of the freight carriers. (Id., ¶ 14). This information includes social security numbers, tax

---

[1] Defendant points out that even though Plaintiffs have labeled their filing "First Consolidated Amended Class Action Complaint," it is actually their second amended complaint. Defendant also points out that while the first amended complaint was timely, Plaintiffs did not seek leave to file a second amendment, or did they ask Defendant for consent. However, Defendant has not moved to strike the "First Consolidated Amended Class Action Complaint" on this basis. In order to maintain consistency with the docket, the Court will refer to the second filed amended complaint (Doc. 8) as the First Consolidated Amended Class Action Complaint.

identification numbers, bank account numbers, and invoice information, including amounts and dates. (Id.) Pursuant to a Broker/Carrier Agreement ("BCA") signed by Plaintiffs, Defendant agreed to treat Plaintiff's personal and financial information as confidential, and to not disclose or use the information for any reason without prior written consent. (Doc. 8-1, PAGEID# 75).

Plaintiffs claim that Defendant failed to implement and maintain reasonable security measures to protect and secure Plaintiffs' and other carriers' personal and financial information from unauthorized access. (Id., ¶ 16,19). Plaintiffs claim that as a result, unauthorized individuals gained access to Defendant's information and technology servers where Plaintiffs' personal and financial information was stored. (Id., ¶ 16). Plaintiffs claim that these unauthorized individuals plan to use Plaintiffs' personal and financial information for criminal or nefarious purposes, including identity theft and identity fraud. (Id., ¶ 17).

On February 27, 2020, Defendant notified Plaintiffs

> We wanted to make you aware that we have uncovered a breach of our IT systems. This breach compromised the security of our online portals for many of our carriers. We believe that external hackers gained access to your tax ID number, bank account numbers, and invoice information, including amounts and dates.

(Id., ¶ 24).

Plaintiffs claim that as a result of the data breach, Plaintiffs must monitor their banking records on a daily or weekly basis to ensure there are no unauthorized transactions. (Id., ¶ 29-35). Plaintiffs state that they will continue to spend time monitoring accounts in the future. (Id., ¶ 29-35).

In their First Consolidated Amended Class Action Complaint, Plaintiffs bring three

claims (1) negligence; (2) breach of implied contract; and (3) negligence *per se*. The parties agree that Ohio law applies to Plaintiffs' claims. Plaintiffs bring these claims on behalf of a class, consisting of:

> All persons residing in the United States of America whose Personal and Financial Information was maintained by TQL during the Data Breach that was disclosed on February 27, 2020, including but not limited to all persons who were sent the February 27, 2020 email informing them of the Data Breach, all persons who were subsequently sent communications informing them of the Data Breach, and all persons whom TQL can identify as having their Personal Information, from February 27, 2020 through the date this class is certified. Excluded from the foregoing class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

(Id., ¶ 78).

Defendant moves the Court for an order compelling Plaintiff Charles Newman to arbitrate his claims; and maintains the remaining Plaintiffs' claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) because this Court should lacks jurisdiction and pursuant to Rule 12(b)(6) because Plaintiffs have failed to state a claim upon which relief can be granted. In the alternative, Defendant moves pursuant to Federal Rule of Civil Procedure 23 for an order striking the Complaint's class allegations.

## II. ANALYSIS

### A. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, codifies "a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349, 128 S.Ct. 978, 169 L.Ed.2d 917 (2008). Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States

district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. In considering a motion to compel arbitration under the FAA, a court has four tasks:

> first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

Plaintiff Newman's BCA contains an arbitration provision which requires him to arbitrate certain disputes. (Doc. 14-3, PAGEID# 154).

Plaintiff Newman does not question the validity of the provision but instead maintains that his claims do not fall within the scope of the provision. Specifically, Plaintiff Newman argues that the dispute in this case is not subject to the arbitration provision because the language of the provision provides: "For disputes whose amount in controversy exceeds $10,000.00 the Parties will seek litigation." (Doc. 14-3, PAGEID# 154).[2] Plaintiff Newman explains that the amount in controversy exceeds $10,000, and therefore he is entitled to seek litigation.

The Court notes that in the First Consolidated Amended Class Action Complaint, Plaintiffs state that "the amount in controversy exceeds $5,000,000, exclusive of interest and costs." (Doc. 8, ¶ 2). Nevertheless, Defendant argues that there are no allegations specifying the amount which Newman claims is in controversy and whether that amount

---

[2]This Court has previously interpreted the same arbitration clause as mandating binding arbitration for disputes of $10,000 or less and not mandating arbitration for disputes over $10,000. *Total Quality Logistics, LLC v. Cornelius Leasing Sys., Inc.*, No. 1:17-CV-150, 2018 WL 1891354, at *7 (S.D. Ohio Mar. 13, 2018).

4

exceeds $10,000. However, at this stage of the litigation, the Court must simply rely on the allegations in the First Consolidated Amended Class Action Complaint. The Court notes that $5,000,000 is more than the mandatory $10,000 threshold; and therefore, based on the allegations in the First Consolidated Amended Class Action Complaint, Plaintiff Newman's claims are not subject to arbitration. Therefore, Defendant's Motion to Compel Arbitration as to Charles Newman is DENIED.

### B. Rule 12(b)(1)

Defendant argues that Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of jurisdiction because Plaintiffs lack standing.

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157, 134 S. Ct. 2334, 2341, 189 L. Ed. 2d 246 (2014) (quoting U.S. Const., Art. III, § 2). To establish Article III standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). When a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element of standing. *See Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). However, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (quoting *Lujan v. National*

5

*Wildlife Federation*, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Defendant maintains that Plaintiffs' allegations do not establish in injury-in-fact or an injury which is fairly traceable to Defendant.

1. **Injury-in-fact**

Defendant argues that Plaintiffs have failed to plausibly allege an injury in fact, and therefore cannot establish standing. Plaintiffs respond that they have alleged that they have spent a substantial amount of time closing bank accounts, opening new bank accounts, updating payment associations, and/or monitoring their bank statements for fraudulent activity. Plaintiffs explain that they have also alleged that they will need to continue to spend time monitoring their financial accounts for the foreseeable future.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548. The mere "possib[ility of] future injury," is insufficient to constitute an injury in fact. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). However, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Driehaus*, 573 U.S. at 158, 134 S.Ct. 2334.

Defendant argues that Plaintiffs' allegations that it might suffer harm in the future are not sufficient to establish standing. There is a circuit split in the federal courts whether an increased risk of future harm due to a data breach is sufficient for Article III standing. *In re Rutter's Inc. Data Sec. Breach Litig.*, No. 1:20-CV-382, 2021 WL 29054, at *5 (M.D. Pa. Jan. 5, 2021) (citing cases). However, as one court has observed, "the differing sets of facts involved in each circuit's decision are what appear to have driven the ultimate

decision on standing, not necessarily a fundamental disagreement on the law." *In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1251 (M.D. Fla. 2019). This same court has identified the following factors which have courts have considered in their analysis: (1) the alleged motive of the unauthorized third party; (2) the type of information compromised, *i.e.*, "easily changeable or replaceable information, such as credit and debit card information, and personally identifiable information, such as social security numbers, birth dates, or driver's license numbers, which is more static;" and (3) whether "there is evidence that a third-party has accessed the sensitive information and/or already used the compromised data fraudulently." *Id*. at 1251-54.

In an unpublished decision, the Sixth Circuit found that the plaintiffs' allegations of a risk of future harm due to a data breach were sufficient for Article III standing. In *Galaria v. Nationwide Mut. Ins. Co.*, the plaintiffs brought a putative class action based on a data breach of "names, dates of birth, marital statuses, genders, occupations, employers, Social Security numbers, and driver's license numbers." 663 F. App'x 384, 385 (6th Cir. 2016). The Sixth Circuit held that the plaintiffs' "allegations of a substantial risk of harm, coupled with reasonably incurred mitigation costs, are sufficient to establish a cognizable Article III injury at the pleading stage of the litigation." *Id*. at 388. The court explained that the theft of the plaintiffs' personal data "places them at a continuing, increased risk of fraud and identity theft beyond the speculative allegations of 'possible future injury'" because "[t]here is no need for speculation where Plaintiffs allege that their data has already been stolen and is now in the hands of ill-intentioned criminals."

In contrast, this Court recognized that under *Galaria*, "the mere allegation of a risk of harm based on a data breach, without evidence of data theft or that the intruder

7

accessed Plaintiff's specific information, is insufficient to state an 'imminent' injury for purposes of Article III standing." *Foster v. Health Recovery Servs., Inc.*, No. 2:19-CV-4453, 2020 WL 5943021, at *5 (S.D. Ohio Oct. 7, 2020). Therefore, it is not the data breach alone which serves as the basis for a finding of injury-in-fact, but instead, the set of circumstances surrounding the data breach which will guide the determination.

Here, Plaintiffs allege that the data breach included their personal and financial information, including Social Security numbers, tax identification numbers, bank account information, and invoice information. This information is similar to the information accessed by hackers in *Galaria*. As the Sixth Circuit observed in that case, "[w]here a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints." 663 Fed. Appx. at 388. In addition, Plaintiffs have alleged that they "have suffered and will continue to suffer additional damages based on the opportunity cost and value of time that Plaintiffs and the other Class members have been forced to expend and must expend in the future to monitor their financial accounts and credit files as a result of the Data Breach." (Doc. 8, ¶ 54). Similar allegations of mitigation costs to prevent the misuse of stolen personal information have been found to be sufficient to establish Article III injury. *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 816 (E.D. Ky. 2019) (standing existed based on allegations that plaintiffs "lost time and money as a result of taking steps to protect their personal data and prevent the misuse of that data by scammers."). Therefore, the Court concludes that the First Consolidated Amended Class Action Complaint contains sufficient allegations to demonstrate that Plaintiffs have suffered an injury in fact.

**2. Traceability**

Defendant argues that even if Plaintiffs have plausibly alleged an injury-in-fact, Plaintiffs' injury is not traceable to Defendant. Defendant explains that Plaintiffs have not alleged that the information disclosed in the data breach could plausibly be used to commit identity theft. Defendant also argues that Plaintiff Newman's injuries were caused by an earlier data breach in 2018.

Plaintiffs allege that Defendant failed "to implement and maintain reasonable security measures" to protect Plaintiffs' personal and financial information against known threats to the security of such information. In addition, Plaintiff Worrell alleges he has received "several credit alert notifications" since the breach. (Doc. 8, ¶ 35).

These allegations are sufficient to establish the causation element at this stage of the litigation. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696 (7th Cir. 2015) ("It is enough at this stage of the litigation that Neiman Marcus admitted that 350,000 cards might have been exposed and that it contacted members of the class to tell them they were at risk. Those admissions and actions by the store adequately raise the plaintiffs' right to relief above the speculative level."). While Defendant is free to litigate at a later stage of the litigation whether the data breach caused Plaintiff Newman's or the other Plaintiffs' fraudulent transactions, "this debate has no bearing on standing to sue." *In re SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir. 2017) (quoting *Remijas*, 794 F.3d at 696). Therefore, the Court concludes that the First Consolidated Amended Class Action Complaint contains sufficient allegations to demonstrate that Plaintiffs suffered an injury that is fairly traceable to the challenged conduct.

Based on the foregoing, the Court concludes that Plaintiffs have standing to bring

their claims for negligence, breach of implied contract and negligence *per se*.

### C. Rule 12(b)(6)

Defendant argues that Plaintiffs fail to state a claim and Plaintiffs' claims should be dismissed on their merits.

In reviewing a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Federal Rule of Civil Procedure 8 provides that all pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although particular detail is not generally necessary, the factual allegations "must be enough to raise a right to relief above the speculative level" such that the claim "is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

#### 1. Breach of implied contract

Defendant argues that under Ohio law, Plaintiffs cannot maintain a claim for a breach of implied contract where there is an express agreement. Defendants point out that Plaintiffs' First Consolidated Amended Class Action Complaint acknowledges that

10

under the BCA Defendant was obligated to keep Plaintiffs' personal and financial information confidential.

The BCA states that "[i]n addition to confidential information protected by law, whether statutory or otherwise, the Parties agree that all of their financial information . . . shall be treated as confidential, and shall not be disclosed or used for any reason without prior written consent by the Parties." As this Court has explained, under Ohio law:

> A party does not state an independent claim for relief for breach of an implied covenant when an expressed term of the contract covers the specific matter. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 274, 714 N.E.2d 898 (Ohio 1999) (holding that a specific clause in the contract governed the purported breach rather than an implied covenant); *McClorey v. Hamilton Cty. Bd. of Elections*, 130 Ohio App.3d 621, 626, 720 N.E.2d 954 (Ohio Ct. App.1998) (holding that the court need not determine if there was an implied covenant because the issue was covered by express language in the lease); *Jost v. Burr*, 69 Ohio App.3d 354, 359, 590 N.E.2d 828 (Ohio Ct. App.1990) (holding that there are no implied promises in relation to any matter that is specifically covered by the written terms of a contract).

*Eggert Agency, Inc. v. NA Mgmt. Corp.*, No. C2-07-1011, 2008 WL 3474148, at *5 (S.D. Ohio Aug. 12, 2008).

Plaintiffs question whether the confidentiality provision in the BCA applies beyond the intentional disclosure of protected information. However, this question involves a matter covered by the confidentiality provision in the BCA and does not create an independent claim for breach of an implied contract. The confidentiality of Plaintiffs' information was an express term of the BCA. Therefore, Defendant's Motion to Dismiss is GRANTED as to Plaintiffs' breach of implied contract claim.

**2. Negligence**

To state a negligence claim under Ohio law, the plaintiff must allege sufficient facts to meet each of the following elements: "the existence of a duty, a breach of the duty, and

11

an injury proximately resulting therefrom." *Middleton v. Rogers Ltd., Inc.*, 804 F. Supp. 2d 632, 639 (S.D. Ohio 2011) (quoting *Nageotte v. Cafaro Co.*, 160 Ohio App.3d 702, 828 N.E.2d 683, 688 (Ohio Ct. App. 2005)).

Defendant argues that the economic loss doctrine bars Plaintiffs' negligence claim. Under Ohio law, "the economic loss rule generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*, 106 Ohio St.3d 412, 835 N.E.2d 701, 704 (2005). "The well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Floor Craft Floor Covering, Inc. v. Parma Community General Hosp. Ass'n*, 54 Ohio St.3d 1, 560 N.E.2d 206, 208 (1990) (quoting *Nebraska Innkeepers, Inc. v. Pittsburgh–Des Moines Corp.*, 345 N.W.2d 124, 126 (Iowa 1984)). As this Court has explained: "'The economic loss doctrine holds that absent tangible physical harm to persons or tangible things there is generally no duty to exercise reasonable care to avoid economic losses to others. . . . These economic losses may be recovered in contract only." *Long v. Time Ins. Co.*, 572 F. Supp. 2d 907, 911 (S.D. Ohio 2008) (quoting *J.F. Meskill Enterprises, LLC v. Acuity*, No. 05-CV-2955, 2006 WL 903207, at *2 (N.D. Ohio Apr. 7, 2006) (citing *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St.3d 609, 653 N.E.2d 661, 667-68 (Ohio 1995)).

Plaintiffs respond that Defendant had a duty to safeguard Plaintiffs' personal and financial information; and this duty was separate and distinct from any contractual duty based on the BCA. Some courts have found the existence of a duty to take reasonable steps to safeguard personal information. For example, in *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, (E.D. Ky. 2019), the court explained that under either Kentucky or

12

Utah law:

> The Plaintiffs have provided sufficient information in the complaint to demonstrate that they were obligated to provide sensitive personal information to Allconnect as a condition of their employment. As a result, while Allconnect may not have had a duty to protect its employees from unknown or unforeseen third-parties, Allconnect did have a duty to prevent foreseeable harm to its employees and, as part of that duty, had a duty to safeguard the sensitive personal information of its employees from unauthorized release or theft. Of course, that is not to say that the Plaintiffs have demonstrated that the duty was breached in this case but only that, when reading the complaint in the light most favorable to the Plaintiff and assuming the facts as true, that the Plaintiffs have pleaded sufficient factual information in their complaint to demonstrate they were owed a duty of care.

*Id*. at 818. However, even if Defendant did have a duty to safeguard Plaintiffs' information under Ohio law, Plaintiffs have not claimed any damages which Defendant's alleged negligence has caused *in addition* to any economic damages Plaintiffs seek to recover.

In *Foster v. Health Recovery Servs., Inc.*, this Court analyzed whether the costs incurred to monitor the plaintiff's credit following a data breach fall within the purview of Ohio's economic loss doctrine or whether that claim must instead be pursued as a contract claim. Case No. 2:19-CV-4453, 2020 WL 5943021, at *10 (S.D. Ohio Oct. 7, 2020).[3] This Court noted:

> Courts in Ohio permit a plaintiff to pursue a tort claim at the same time as a breach of contract claim if "the plaintiff is able to demonstrate that tortious conduct by the defendant ... breached 'a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.' " *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 839 (S.D. Ohio 2013). Plaintiff must also allege "actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract." *Id*. at 839.

---

[3] In *Foster*, the defendant was a non-profit which provided treatment for mental illness or substance abuse issues. 2020 WL 5943021, *1. The defendant notified its clients that for nearly a year, an unauthorized IP address had been remotely accessing its computer network, which contained the personal information of its clients. The plaintiff claimed, on behalf of himself and those similarly situated, that the defendant's failure to take reasonable measures to protect his personal information caused financial injury and placed him at risk of identity theft and fraud. *Id*.

13

2020 WL 5943021, at *10. This Court concluded that because the plaintiff's tort and breach of contract claims were premised on the same allegations of wrongdoing and based on the same claims for damages, the plaintiff's negligence claim was barred by the economic loss doctrine. *Id*.

As in *Foster,* Plaintiffs' negligence claims are premised on the same allegations and the same claims for economic damages which would arise from a claim based on a breach of the BCA. Because the economic-loss rule bars Plaintiffs' negligence claim, Defendant's Motion to Dismiss is GRANTED as to Plaintiffs' negligence claim

### 3. Negligence *per se*

In Ohio, "[w]here a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence *per se*." *Chambers v. St. Mary's Sch*., 82 Ohio St.3d 563, 697 N.E.2d 198, 201 (Ohio 1998).

Here, Plaintiffs claim that Defendant had duty to refrain from unfair acts or practices in violation of the Federal Trade Commission Act, 15 U.S.C. § 45(a). Plaintiffs cite to a number of federal courts which have found negligence *per se* based on alleged violations of Section 5 of the Federal Trade Commission Act. *See*, *e.g.*, *In re Equifax, Inc., Customer Data Security Breach Litig*., 362 F. Supp. 3d 1295, 1327 (N.D. Ga. 2019). However, as this Court has recognized: "Regarding the application of the economic loss rule to actions sounding in negligence, '[t]he well established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.'" *Wells Fargo Bank, N.A. v. Fifth Third Bank*, 931 F. Supp. 2d 834, 840 (S.D. Ohio 2013) (quoting *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 560 N.E.2d 206, 208 (Ohio 1990)).

14

Therefore, like their negligence claim, Plaintiffs' negligence *per se* clam is barred by the application of the economic loss rule; and Defendant's Motion to Dismiss is GRANTED as to Plaintiffs' negligence *per se* claim.

### D. Class allegations

In the alternative, Defendant argues that Plaintiffs' class allegations should be struck because Plaintiffs are seeking a nationwide class, but Plaintiffs' claims would need to be adjudicated under the laws of multiple jurisdictions. While there appears to be no dispute that Ohio law applies, the Court finds it unnecessary to address Defendant's argument given the Court's rulings dismissing Plaintiffs' claims.

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Compel Arbitration as to Charles Newman (Doc. 14) is **DENIED**; Defendant's Motion to Dismiss the Complaint (Doc. 14) is **GRANTED**; and Defendant's Motion in the Alternative, to Strike Class Allegations filed by Defendant Total Quality Logistics, LLC (Doc. 14) is **DENIED as MOOT**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant.

**IT IS SO ORDERED.**

                                                */s/ Michael R. Barrett*
                                          JUDGE MICHAEL R. BARRETT